IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GENOA NATIONAL BANK, ) | |
| ) | 8:10CV438 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM AND ORDER |
| RONALD V. ODETTE and ) | |
| RONALD V. ODETTE FAMILY ) | |
| LIMITED PARTNERSHIP, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Ronald V. Odette's motion for reconsideration, Filing No. 75. For the following reasons, the motion will be denied.

**I. BACKGROUND**

On November 22, 2010, Plaintiff Genoa National Bank (GNB) filed a four-count complaint against Defendants Ronald V. Odette (Odette) and the Ronald V. Odette Family Limited Partnership (Odette Family LP). *See* Filing No. 1. Count I alleges that Odette breached its obligations to GNB under the terms of a promissory note; Count II alleges that Odette breached its obligations to GNB under the terms of a security agreement; Count III alleges that the Odette Family LP breached its obligations to GNB under the terms of a guaranty; and Count IV alleges that the Odette Family LP engaged in a fraudulent transfer of assets in order to avoid its obligations to GNB. *See generally id.* On January 26, 2012, the court found that GNB was entitled to summary judgment against Odette on Count I, *see* Filing No. 70, and to a default judgment against the Odette Family LP, *see* Filing Nos. 71, 72. Count II remains unresolved, and a trial is scheduled to commence during the week of May 29, 2012. *See* Final Progression Order, Filing No. 79.

Odette, who is proceeding *pro se*, mailed a handwritten letter to the court on or about February 7, 2012.  *See* Filing No. 75.  The court construes this letter to be a motion for reconsideration of the January 26, 2012, memorandum and order granting summary judgment to GNB on Count I.  *See* Filing No. 70.

### II. DISCUSSION

#### A.  Law

"The Federal Rules of Civil Procedure do not mention motions for reconsideration." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999).  Nevertheless, it is well-established that a "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment."  *K.C.1986 Ltd. Partnership v. Reade Manufacturing*, 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995)).  Federal Rule of Civil Procedure 54(b) states,

> When an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In the instant case, the court directed the entry of a final judgment against the Odette Family LP–but not Odette–after expressly finding that there was no just reason for delay.  *See* Mem. & Order at 4, Filing No. 71.  Although this judgment adjudicated the claims alleged in Counts III and IV, this action continues to present two claims for relief

2

(*i.e.*, the claims alleged against Odette in Counts I and II), and the memorandum and order on GNB's motion for summary judgment did not adjudicate both of these remaining claims. *See generally* Mem. & Order, Filing No. 70 (finding that GNB was entitled to summary judgment against Odette on Count I). In short, because no final judgment has been entered against Odette, the court may revise its order granting summary judgment to GNB on Count I.

"Although Rule 54(b) does not furnish criteria to be applied by a district court when facing a request that its earlier rulings be modified, those criteria can be derived from a variant of the law of the case doctrine." *Travelers Indem. Co. of Illinois v. Millard Refrigeration Services*, No. 8:00CV91, 2002 WL 442264, at *1, (D. Neb. March 22, 2002) (citing *Conrod v. Davis*, 120 F.3d 92. 95 (8th Cir. 1997)). "As a general proposition, orderly and efficient case administration suggests that questions once decided not be subject to continued argument." *Id.* (citing *Conrod,* 120 F.3d at 95). "It must be emphasized that, because reconsideration interrupts the flow of litigation toward its conclusion, it 'should not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought.'" *Id.* (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)).

### B. Analysis

Odette makes three general arguments in his motion for reconsideration. *See generally* Filing No. 75. The court will analyze each of these arguments in turn.

### 1. Odette's Citizenship

Before granting GNB's motion for summary judgment, the court determined that Odette is a citizen of the State of Oklahoma for the purposes of diversity jurisdiction. *See* Mem. & Order at 1-2 & nn.2-3, Filing No. 70; *see also* Filing Nos. 57, 69. In his motion for reconsideration, Odette argues that this determination was erroneous. More specifically, he claims that he "has not lived in Oklahoma for three years"; that his Oklahoma property "was sold at auction in October 2008"; that he "lives in a camper and has no address"; that he sees "no permanent address in [the] future"; and that neither he nor the Odette Family LP are citizens of Oklahoma. Mot. to Reconsider at 1-3, Filing No. 75. He admits that he "has had [a] post office box at Burbank, Okla.," but he states that he "has been notified by [a] postal employee that they will not be able to honor [the] box rent since he has not had an Oklahoma residence in three years." *Id.* at 2. He adds that he rarely visits the box and "really does not need" one because his "Social Security check is deposited directly," and the "[o]nly mail he receives of any importance is from court." *Id.* at 2-3. Nevertheless, he claims that he has "checked in to [a] Nebraska box." *Id.* at 2.

Odette's claims are not properly supported, and therefore the court cannot consider them in connection with GNB's summary judgment motion. *See* Mem. & Order at 1 n.1, Filing No. 70 (citing Fed. R. Civ. P. 56(c)(1)(A); 28 U.S.C. § 1746; *Elder-Keep v. Aksamit,* 460 F.3d 979, 984 (8th Cir. 2006); *Schneider v. Chertoff,* 245 F.R.D. 422, 424 (D. Neb. 2007). The court also notes that GNB attempted to engage Odette in discovery on the question of his citizenship, but he refused to participate. *See* Filing No. 69. Under the circumstances, Odette's belated attempt to dispute his citizenship is not well-taken.

In any event, even if Odette's claims were taken to be true, they do not undermine the court's finding that Odette is a citizen of Oklahoma. "Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely," and "[o]nce an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship." *Altimore v. Mount Mercy College,* 420 F.3d 763, 768-69 (8th Cir. 2005). In support of its motion for summary judgment, GNB submitted evidence showing that Odette established Oklahoma as his state of citizenship. *See* Pl.'s Response to Order to Show Cause at 5-8, Filing No. 67. Odette has not disputed this evidence, nor has he claimed that he was *never* an Oklahoma citizen. Instead, he suggests that his Oklahoma citizenship terminated when he left the state, even though he has "no address" and sees "no permanent address in [the] future." Mot. to Reconsider at 2-3, Filing No. 75. As noted above, however, citizenship does not automatically change when one leaves his established state of citizenship. To legally acquire a new state of citizenship, one must be physically present in a new state and demonstrate intent to remain there indefinitely. *See Altimore,* 420 F.3d at 768. Odette has failed to make either showing: he has not identified the state where is physically present, and his admission that he has (and expects to have) no permanent address undermines any argument that he intends to remain outside of Oklahoma indefinitely. The fact that he may have "checked in to" a Nebraska mailbox at some unspecified time does not alter this conclusion. In short, because Odette has not shown that he has legally acquired a new state of citizenship, he remains a citizen of Oklahoma for the purposes of diversity jurisdiction. *See Altimore,* 420 F.3d at 769; *Yeldell v. Tutt,* 913 F.2d 533, 537 (8th Cir. 1990).

### 2. Odette's Lack of Funds

Odette also claims that he lacks funds. He states that after his land was sold at auction in 2008, all proceeds were paid to creditors; he usually has no phone service; he has been unable to pay debts owed to his "CPA or attorney"; he cannot pay an "IRS judgment" against the Odette Family LP; and he "lives of[f]" Social Security. Mot. to Reconsider at 2-3, Filing No. 75. As noted above, Odette's claims are not properly supported and cannot be considered. *See supra* Part II.B.1. Moreover, the court is not persuaded that Odette's financial condition excuses his default on the promissory note (or otherwise renders the summary judgment ruling infirm). *See Sunflower Oil Co. v. Wilson,* 142 U.S. 313, 320 (1892) ("There is no doubt of the general proposition that mere inability to pay is no defense to the performance of a contract, or to a promise to pay.")

### 3. The Oral Settlement Agreement

In opposition to GNB's motion for summary judgment, Odette argued that because he and GNB President Brad Wieck agreed orally to settle GNB's claims for $100,000, GNB could not recover more than $100,000 on the promissory note. The court rejected this argument because Odette signed agreements stating that the promissory note could only be modified in writing, and the doctrine of promissory estoppel could not be used to enforce the oral agreement. *See* Mem. & Order at 8-12, Filing No. 70. The court explained,

> [T]he doctrine of promissory estoppel would entitle Odette to recover money that he lost due to his reasonable and foreseeable reliance upon Wieck's oral promise to settle the case, but there is no evidence that Odette suffered any such losses. Instead, he merely claims that he lost the chance to limit his liability to $100,000.00 when GNB refused to execute the settlement papers. Promissory estoppel is not a viable theory of recovery under these circumstances, and Odette cannot use it to avoid the "no written

> modification" agreements that he signed. Thus, the oral settlement agreement does not provide Odette with any defense against GNB's claim for recovery on the Note.

*Id.* at 12 (footnote omitted).

In his motion for reconsideration, Odette re-frames the implications of GNB's refusal to execute the settlement papers, arguing,

> The mistake that Odette made was not getting Mr. Wieck to put agreement in writing. Mr. Wieck needed cash. Odette furnished cash 100,000 [sic]. This payment kept Odette from replacing cattle that would have made money to pay off Genoa in entirety. We relied on Mr. Wieck to keep his end of the bargain. As a result of Mr. Wieck's action we conducted business accordingly. The results [sic] of the reliance on Mr. Wieck we were put out of business. Mr. Wieck's actions have cost Odette FLP over $2,000,000. Future judgments will cost us even more. Not to even mention the mental anguish.

Mot. to Reconsider at 3-4, Filing No. 75. In other words, Odette now argues that his business failed–and the Odette Family LP lost more than $2 million–because Odette was unable to use the $100,000 "payment" to continue operations.

Aside from being improperly supported, Odette's argument is logically flawed. It is undisputed that GNB never accepted a $100,000 settlement payment from Odette; therefore, it cannot be said that Odette's reliance upon Wieck's oral promise caused Odette to make a $100,000 "payment" that, in turn, prevented him "from replacing cattle" and destroyed his business.

There is nothing in the record suggesting that Odette's inability to pay his debts–or his business's failure–can be attributed in any way to his reliance on an alleged oral settlement with Wieck. The court finds that Odette's argument is nothing more than a thinly-veiled attempt to re-characterize his business losses as "reliance damages" for the

7

purposes of advancing a promissory estoppel theory, and the matter merits no further discussion.

In summary, the court finds that Odette has presented no new evidence or legal arguments that warrant revisions to the memorandum and order granting summary judgment to GNB on Count I. Accordingly,

IT IS ORDERED that Odette's motion for reconsideration, Filing No. 75, is denied.

DATED this 30th day of March, 2012.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.